## KIMBLE v DOERR et

Common Pleas Court, Scioto Co

No 25962. Decided July 18, 1936

Henry Bannon, Portsmouth, for plaintiff.

E. G. Miller and Sherrard M. Johnson, Portsmouth, for defendant.

### OPINION

By BAGBY, J.

The plaintiff is receiver of The First National Bank of Portsmouth, Ohio. The suit is to set aside a deed made by the defendant, William H. Doerr, to his daughter, Ethel M. Doerr, dated March 24, 1933. The petition charges that the deed was made with intent to hinder, delay and defraud his creditors, the said bank and the conservator.

The answer admits the indebtedness of the defendant, William H. Doerr to the bank on a note dated June 21, 1932, the defendant, William H. Doerr, being surety on the note for his son, Harry A. Doerr, and as collateral for which the defendant, William H. Doerr, had pledged his forty shares of bank stock in said bank through a trustee.

The property of the said William H. Doerr consisted of the forty shares just mentioned and the real estate conveyed to the daughter, situate in Portsmouth, Ohio. Judgment was taken by the conservator of the bank on the note held by the bank against the de-

fendant. William H. Doerr, and the son.

After signing the note as surety for his son and pledging the bank stock as collateral on the 24th day of June, 1932, the defendant, William H. Doerr, executed and delivered a note to his daughter for the sum of $8000.00, thereby "desiring to equalize his estate between his daughter, Ethel Doerr, and his son, Harry A. Doerr."

The answer further pleads that "the said William H. Doerr in payment of said note to Ethel Doerr executed and delievered to said Ethel Doerr" the deed in question.

The proofs show that the dividends on the stock before the depression were 16%. The last dividend paid by the bank was in January, 1933, a semi-annual dividend of 2%. The bank had been on a restricted withdrawal basis and was finally closed by the general Federal order which closed all banks on March 5, 1933. Other banks in the city of Portsmouth were reopened a few days later, but the First National was not again opened and a conservator took charge on March 22, 1933, two days before the deed in question was made.

The deed was given to the daughter, Ethel, in exchange for the $8000.00 note. The defendant, William H. Doerr, had no indebtedness except that to the bank on the note and such as would arise on account of his liability as a stockholder of the forty shares mentioned.

At the time the stock was pledged as collateral an understanding was had between William H. Doerr and the bank that the bank should hold the stock for his redemption for the period of two years from and after June 21, 1932. The value of the bank stock at the time it was pledged, it is claimed, was from $12,000.00 to $14,000.00. At that time it was bearing dividends of $16.00 a share annually.

In January, 1933, when the last dividend was paid, if we are to judge of the value of the stock by its earning capacity, its value then would be $3000.00 or $4000.00; a decline in dividend from $16.00 to $4.00 would mean a corresponding decline in the value of the stock.

The three defendants occupied the property as a homestead before the deed was made and no change was made in this matter after the deed was made so far as the evidence shows.

There was no consideration for the $8000.00 note given by the defendant, William H. Doerr, to his daughter and consequently there was no consideration for the deed he gave her. This in effect is conceded in the pleadings.

There is no substantial dispute about the facts, either in the pleadings, the evidence, or in the briefs filed by counsel. While the defendant, William H. Doerr, was in debt to the bank he made and delivered the deed in question to his daughter as a gift. The case must be determined on the facts as they existed at the time the deed was made. It is not very material what the value of the bank stock was at the time it was pledged nor is its value controlling at the time the last dividend was paid in January, 1933. The real question is, what was its value and what were the circumstances at the time the deed was made on the 24th day of March, 1933?

At that time the bank was closed and had been closed for some two weeks. It was in charge of a conservator. Efforts were being made by those vitally interested to retain or restore public confidence in the bank. Other banks in the city had reopened and resumed business.

The daughter testifies that she was satisfied to hold the father's note from the time it was given her in June, 1932, for some nine months, to March 24, 1933. The evidence submitted gives no special answer as to what it was that stirred the parties to execute the deed in question at the time that was done. Whether there was actual intent to hinder, to defraud, or delay the creditor, the bank, at the time the conveyance was made, it does not seem necessary to say. Neither is it necessary to determine whether there was a secret trust in favor of the grantor who continued to use the property as he had before.

The authorities seem to be uniform in this kind of a case to the effect that where there is no consideration for the conveyance it can not be sustained as against existing creditors, unless it appear that the debtor retain sufficient property to pay all his obligations.

Whether it be regarded as fraudulent **per se** or **prima facie** or presumptively fraudulent would make no difference in this case. The Ohio rule is that it is presumptively fraudulent as to existing creditors. Fraudulent conveyances, **19 O. Jur. §81.**

When the defendant, William H. Doerr, without consideration, conveyed his property to his daughter and did not retain sufficient property to pay his debts. a presumption that the conveyance was fraudulent arose.

"It is the duty of the debtor to retain at least a sufficiency of his property to pay all his debts and perform all his contracts; if he does not justice requires that the property should be followed into the hands of the donee by the creditor." **Fraudulent Conveyances, 19 O. Jur. §83.**

The petition charges the defendants with "intent to hinder, delay and defraud." This is denied and the burden is on the plaintiff to prove it. But the plaintiff is favored by the presumption that the voluntary conveyance was fraudulent. The presumption must be met by the defendants. The method of proof in a case where actual adequate, valuable consideration is given for the conveyance by the grantee is different in its requirements from what it is in a case where the conveyance is a mere donation. The daughter, Ethel, the donee, gave nothing to her father in exchange for the deed except the promissory note which he had donated to her. If, instead of this, she had actually paid $8000.00, or its equivalent, the rule of law would then require of the plaintiff a showing of actual intent to defraud on the part of the grantor with knowledge of the grantee. But in the instant case the rule is that a presumption that the transaction was fraudulent arises out of the showing that there were existing debts and that the conveyance was without consideration; and the only explanation that can justify such a transaction and uphold the deed is the showing that the donor retained sufficient property to pay all his existing debts.

If the bank stock was of sufficient value on the 24th day of March, 1933, to pay the obligations of William H. Doerr to the bank, the deed should be permitted to stand; otherwise not. I am unable to reach the conclusion that the bank stock at that time was sufficient in value for the purpose just stated in face of the situation as the evidence shows it existed. There had been a decline in the value of the bank stock indicated by the decline in its dividends; the bank had been closed and not re-opened; it was in the hands of a conservator; the efforts which were widely advertised and generally known to restore the public confidence which had declined; the general situation of the bank at the time. All these afford little if any reason for believing at that time that the bank stock in question was sufficient to meet the obligations to the bank.

We have carefully examined the cases cited in the briefs and acknowledge the obligation we feel for the excellent manner in which the authorities were presented. It seems necessary to specially mention one of the cases cited by counsel for the defendant, **Carruthers et v Kennedy et, 121 Oh St p. 8.** The vital distinction between the case cited and the one under consideration is to be found in the fact that in the case cited the grantee was in fact a purchaser for a valuable consideration. Whereas, in the instant case, the grantee was such without any consideration. The burden and obligation of the plaintiff in the case cited to show knowledge of the insolvency of the grantor or fraudulent intent was not sustained. In the instant case the plaintiff is favored, as already pointed out, by the presumption arising out of the showing that the conveyance was without consideration and that suffi-

cient property was not retained to pay the grantor's indebtedness.

The finding is in favor of the plaintiff, setting aside the deed. Entry may be prepared accordingly.